## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOROTHY BRANK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 07-185-LPS |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

Melissa R. Allman and Deborah I. Gottschalk, COMMUNITY LEGAL AID SOCIETY, INC., Wilmington, Delaware, Attorneys for Plaintiff.

David C. Weiss, Acting United States Attorney, and Dina White Griffin, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware; Michael McGaughran, Regional Chief Counsel, and Roxanne Andrews, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, Attorneys for Defendant.

## **MEMORANDUM OPINION**

July 22, 2009
Wilmington, Delaware

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted for the former Commissioner Jo Anne B. Barnhart.

STARK, U.S. Magistrate Judge

## I. INTRODUCTION

Plaintiff Dorothy A. Brank ("Brank") appeals from a decision of Defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently pending before this Court are cross-motions for summary judgment filed by Brank and the Commissioner. (D.I. 13, 16) Brank's motion asks this Court to reverse and remand Defendant's decision. (D.I. 14) The Commissioner's motion requests that this Court affirm his decision. (D.I. 17) For the reasons set forth below, Brank's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

## II. BACKGROUND

### A. Procedural History

Brank filed her claim for DIB on March 31, 2005. (D.I. 11 ("Transcript" and hereinafter "Tr.") at 45-53) The application was denied on May 25, 2005 and again on August 9, 2005 on reconsideration. Tr. at 29, 35. Brank filed a request for an administrative hearing on September 16, 2005. Tr. at 40. The hearing before an administrative law judge (hereinafter "ALJ") was held on May 30, 2006. Tr. at 13, 483. The ALJ issued a decision to affirm the denial of benefits to Brank on September 9, 2006. Tr. at 10. On November 13, 2006, Brank appealed to the Appeals Council. Tr. at 9, 431-37. The Appeals Council denied the request on January 26, 2007. Tr. at 5. The ALJ's September 9, 2006 decision became the final decision of the Commissioner. Tr. at 5; *see also* 20 C.F.R. §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

1

On March 30, 2007, Brank filed a complaint seeking judicial review of the ALJ's

September 9, 2006 decision. (D.I. 2) She moved for summary judgment on December 27, 2007.

(D.I. 13) The Commissioner filed a cross-motion for summary judgment on March 5, 2008. (D.I.

16) On May 13, 2009, this case was referred a United States Magistrate Judge. (D.I. 21) On June

1, 2009, both parties consented to the jurisdiction of a United States Magistrate Judge. (D.I. 23)

## B.    Factual Background

### 1.    Plaintiff's Medical History, Treatment, And Condition

Brank was 46 years old when she filed the application for DIB on March 31, 2005. Tr. at

45. She completed high school and took some college courses. Tr. at 70, 489. She had worked

as a billing analyst until allegedly becoming disabled in September 2003. Tr. at 56-58, 66, 490.

She is divorced and has three teenage children living with her in her home. Tr. at 45-46. From

the time her job ended in September 2003 until December 2005, she received a monthly long-term

disability payment through private insurance. Tr. at 491, 507.

Brank claims she became disabled on September 15, 2003 after an emergency room visit

and hospitalization at Wilmington Hospital. Tr. at 211, 491. She alleges disability due to stress,

anxiety, severe hypertension, depression, cardiovascular problems, migraine headaches, and back

pain. Tr. at 15, 65. She has been seeking treatments and counseling from a variety of physicians,

social workers, and institutions. Tr. at 16, 118, 230, 375, 383, 438.

2

a.     **Anxiety, Depression, And Neurological Problems**

i.     **Drs. James Gill And Joseph Schrandt**

James Gill, M.D., was Brank's primary care physician from January 2003 to at least March

2006. Tr. at 118-210, 296-323.[2]  On January 20, 2003, Brank complained to Dr. Gill of

depression and headache, and Dr. Gill found that Brank's "biggest issue is family situation." Tr.

at 208-09.  Her mother was dying and her father suffered depression. Tr. at 208.  She took care of

her father and her children and grandchildren without child support. *Id.* On April 24, 2003, Dr.

Gill reported that Brank's symptoms improved on Wellbutrin and Xanax. Tr. at 191, 193.

On September 15, 2003, Dr. Gill referred Brank to Wilmington Hospital for severe

depression. Tr. at 184-85, 212.  Brank was overwhelmed by a variety of family problems: her

mother had passed away and now Brank undertook responsibility to care for her father with

Alzheimer's; her son had trouble in school; and her boyfriend broke up with her. Tr. at 16, 184.

She was discharged under stable condition. Tr. at 215.  After the incident and before she filed her

DIB application on March, 31, 2005, Brank frequently complained of depression and/or anxiety in

her regular office visits. *See, e.g.*, Tr. 127, 129.  Dr. Gill's reports from this period are mixed. Tr.

at 118-83.  While Dr. Gill usually observed improvement or stability in Brank's symptoms of

depression and "normal" or "moderately depressed" mood and affect, *see, e.g.*, Tr. at 130, 141-42,

148, he also noted occasions of deterioration in mental status, *see, e.g.*, Tr. at 179.  Dr. Gill

consistently observed that Brank's anxiety and depression were largely due to her family issues.

*See, e.g.*, Tr. at 129, 136, 166.  For instance, her symptoms improved when her children moved

---

[2]Brank visited Christiana Care Family Medicine Center for her regular health care needs. The medical records indicate that Dr. Gill was her primary physician, but she occasionally saw other physicians in the Center.

out in May 2004, but then worsened when they moved back in. Tr. at 135, 144. The effects of various medications including Paxil, Zoloft, Xanax, Wellbutrin, and Serzone were inconsistent. Tr. at 16, 118-210. On a few occasions, Dr. Gill reported "common without intractable migraine." *See, e.g.*, Tr. at 124, 175.

Brank continued seeing Dr. Gill after filing her DIB application. Tr. at 296-323. On November 2, 2005, Dr. Gill reported that Brank's depression and anxiety prevented her from working. Tr. at 305. On March 16, 2006, Dr. Gill referred Brank to the emergency room of St. Francis Hospital following complaints of headaches and right-sided numbness. Tr. at 320. Brank was normal neurologically according to Dr. Gill's examination and emergency department records. Tr. at 321, 328-29. At the hospital, Neurologist Joseph Schrandt, M.D., examined Brank and reported normal neurological findings, as well as normal mental status, mood, and affect. Tr. at 348-49. Dr. Schrandt suggested to Brank that "stress may be playing a role" in her symptoms. Tr. at 349. On April 6, 2006, Brank returned to Dr. Schrandt for a follow-up exam. Tr. at 375. Dr. Schrandt reported normal brain MRI and lab studies, and concluded that it was very unlikely that Brank's numbness was related to any serious neurological diseases; he was "almost certain" that stress was involved in her symptoms. Tr. at 376.

### ii.  Christina Johnson

Brank sought counseling with Christina Johnson, a medical social worker at the Family Medicine Center in Wilmington, Delaware, for major depression from November 2003 to December 2004. Tr. at 371-74. Ms. Johnson reported that Brank "did improve some [through counseling] and took many steps to alleviate some of the stress." Tr. at 371. However, Ms.

4

Johnson believed that Brank "may be incapacitated ongoingly" because of her "serious anxiety and depression." Tr. at 371.

### iii.    Dr. Fabio Villafuerte

Brank referred herself to Community Mental Health Services in January 2005, and received psychiatric treatment and counseling until March 2006. Tr. at 230-65, 354-70. On January 13, 2005, Dr. Fabio Villafuerte assessed a global assessment of functioning (GAF) scale score of 60, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Tr. at 259.[3] On January 21, 2005, Dr. Villafuerte concluded that Brank's depression was not as severe as her frustration and resentment toward her family life. Tr. at 362. On February 8, 2005, Dr. Villafuerte diagnosed major depressive disorder, passive aggressive personality, and a GAF score of 60. Tr. at 264. He prescribed Buspar, Trazodone, and Paroxetinet. *Id.*

Dr. Villafuerte consistently noted Brank's extensive stressors, including financial difficulties and responsibilities of caring for family. Tr. at 234, 354. In his final note on March 24, 2006, Dr. Villafuerte reported that Brank's depressed moods improved despite the family and financial issues. Tr. at 354. He also noted no clinical depression. Tr. at 357. On a few occasions, Dr. Villafuerte reported that some medications, such as Bupropion and Ambien, improved her symptoms. Tr. at 354, 369.

---

[3]*See* American Psychiatric Ass'n., Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000) (hereinafter "DSM").

5

###### iv.      State Agency Physicians

In order to determine whether Brank was qualified for DIB, in May 2005, state agency physicians reviewed her medical file and completed Residual Functional Capacity Assessment forms. Tr. at 266-93.[4]  On May 19, 2005, Pedro Ferreira, Ph.D., reviewed Brank's medical file and concluded on a Psychiatric Review Technique form that Brank's depression did not satisfy the requirements of Listing 12.04 Affective Disorders. Tr. at 276.[5]  On a Mental Residual Functional Capacity Assessment form, Dr. Ferreira indicated that Brank was not significantly limited or was only moderately limited in all areas of Understanding and Memory, Sustained Social Interaction and Persistence, Social Interaction, and Adaptation. Tr. at 280-81.  Dr. Ferreira wrote that Brank had "a well-developed role of family caretaker and [was] paying a high emotional price for this" and that she "could return to a greater level of independence through a return to work." Tr. at 282.  He also noted her GAF score of 60. *Id.*

On May 24, 2005, Ann Aldridge, M.D., reviewed Brank's medical file and concluded on a Physical Residual Functional Capacity Form that Brank could perform the exertional demands of medium work. Tr. at 285.  Dr. Aldridge explained that Brank's hypertension was controlled without indication of end-organ damage. *Id.*  Brank's primary care physician documented rare headache complaints and noted Brank was not on any prophylactic migraine therapy. *Id.*  Dr. Aldridge also noted Dr. Gill's diagnosis that Brank's migraine was "not intractable." *Id.*  There

---

[4]The state agency physicians did not examine Brank. Tr. at 19.

[5]Federal regulations provide a detailed list of impairments and corresponding criteria for disability determinations under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 12.04 specifies the requirements for Affective Disorders.  To meet the requirements, a claimant must satisfy criteria "A" as well as criteria "B" or "C."

was no medical evidence to support Brank's claim of a cardiovascular problem. Tr. at 286. Dr.

Aldridge also noted that Brank had admitted that she had no physical disabilities, and further

observed that Brank performed all household tasks and took care of three teenage children as well

as three grandchildren under the age of three. Tr. at 100, 286.

### v.      Dr. P.C. Desai

In April 2006, Brank began receiving treatment from Dr. P.C. Desai, a psychiatrist, and

continued receiving that treatment after the May 30, 2006 hearing. Tr. at 383-85, 467-82. On

September 14, 2006, less than four months after her administrative hearing, Brank was admitted

to the Rockford Center for inpatient treatment under the care of Dr. Desai. Tr. at 477-82. She

was discharged four days later to the outpatient program after showing improvement during

hospitalization. *Id.* Family support and financial difficulties continued to be major issues for her.

Tr. at 477.

### vi.      Deborah Devany

After the May 2006 administrative hearing, Brank began to receive counseling from

Deborah Devany, Licensed Clinical Social Worker. Brank saw Ms. Devany from June 2006 to

October 2006. In a Mental Health Assessment on June 8, 2006, Ms. Devany noted Brank's

complaint about family stressors. Tr. at 441. The mental status exam revealed that Brank had a

decreased energy level, a sad and constricted affect, and passive suicidal ideation, as well as a

cooperative attitude, neat appearance, normal speech, normal and logical thought process, and

good judgment/insight. Tr. at 443-44. Ms. Devany diagnosed severe major depressive disorder, generalized anxiety disorder, and a GAF score of 40. Tr. at 444.[6]

In a Treating Source Statement dated October 30, 2006, Ms. Devany stated that her treatment of Brank began on June 8, 2006 and "remain[ed] ongoing." Tr. at 438. In response to the question whether Brank's disorders resulted in any listed symptoms, Ms. Devany checked all the boxes to indicate that Brank had "Marked restrictions of daily living activities;" "Marked difficulties in maintaining social functioning" and in "maintaining concentration, persistence or pace;" and "Repeated episodes of decompensation, each of extended duration." Tr. at 439.[7]

The next question on the form asks whether Brank has "a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or sign[s] currently attenuated by medication or psychosocial support, and one of the following [symptoms]." *Id.*[8] Ms. Devany again checked all the boxes to indicate that Brank had "[r]epeated episodes of decompensation, each of extended duration; [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; [and] [c]urrent history of 1 or more years'

---

[6] A GAF score of 40 indicates major impairment in areas like family relations. *See* DSM at 32-34.

[7] The description of the symptoms is a verbatim reproduction of criteria B under Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P, 12.04(B), App. 1.

[8] The question transforms the heading of criteria C under Listing 12.04 into an interrogative sentence. The proffered answers duplicate criteria C precisely. *See* 20 C.F.R. Pt. 404, Subpt. P, 12.04(C), App. 1.

8

inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.*

Ms. Devany's progress notes from this period demonstrate that Brank complained of stressors at home and presented with depressive symptoms. Tr. at 467-71. Brank also reported that she still took care of her children as of October 9, 2006. Tr. at 471.

### b. Back Pain

Brank did not complain about back pain to her primary care physician, Dr. Gill, until November 2, 2005. Tr. at 305. She received treatment at Mid-Atlantic Spine from December 2005 to May 2006 for low back pain, leg swelling, and numbness. Tr. at 387-430. Her pain level was usually 6, and occasionally 6-7, out of a maximum of 10. Tr. at 387-425. The initial diagnosis was chronic low back pain, myofascial pain, possible lumbar radiculopathy, and lumbar spondylosis. Tr. at 427. In January 2006, a lumbar spine MRI showed mild disc bulging, particularly at the L4-L5 level, a tiny annular tear at the same level, and minimal facet arthropathy. Tr. at 429. On January 11, 2006 and March 10, 2006, Brank received nerve block injections. Tr. at 399, 422. She received a lumbar epidural injection on February 20, 2006. Tr. at 411. Medications prescribed throughout that period include Lidoderm, Skelaxin, and Hydrocodone. Tr. at 386. She consistently indicated that medication and change of position made her pain better, although the pain would not stop completely. Tr. at 387-424.

### 2. The Administrative Hearing

At Brank's administrative hearing, the ALJ heard the testimony of Brank; her friend, Ted Grunza; and Kelly Beth, a vocational expert. Tr. at 485.

9

a.      **Brank's testimony**

Brank testified that she had worked at Christiana Care for seven years as a Billing Analyst, until she was placed in an intensive out-patient program at Wilmington Hospital. Tr. at 490. Over the several months prior to the end of her job at Christiana Care, Brank had lost her mother to cancer, had to provide care to her Alzheimer's-stricken father, had been caring for her children and grandchildren, and had seen her significant other walk out. Tr. at 490-91. She felt she had lost everything. Tr. at 491.

Brank said she was capable of standing for one and one-half hours and sitting the same amount of time before starting to get stiffness and numbness and back pain. Tr. at 491. She needs to change positions, take medication, or lay down to alleviate the discomfort. Tr. at 492. Brank said she could walk only less than a mile. *Id.* She experiences shortness of breath climbing steps and carrying a grocery bag. *Id.* Brank stated that she could lift no more than 5 pounds and was limited in bending, lifting, or stretching upward due to a spine abrasion. Tr. at 493. She has problems standing up from a kneeling position unless she has support on both sides. *Id.* Because of problems with her back tear at L5 and bulging discs she was placed on narcotic medication and then the dosage was increased. Tr. at 493-94. Brank described her pain as throbbing and stated that rainy weather makes it worse. Tr. at 494. She has a lot of problems with stiffness and spasms in her legs for which she takes a muscle relaxer. *Id.* She experiences numbness on the right side of her body. *Id.* She cannot use her hands when they go numb. Tr. at 495. Brank has constant foot pain, which physical therapy made worse. Tr. at 495-96.

Brank testified that she has a twelve-year history of depression. Tr. at 496. She was placed on medications by a psychiatrist, met regularly with a therapist, and was able to work

10

before September 2003. Tr. at 497. Brank described her symptoms of depression as feelings of hopelessness, worthlessness, anger, and crying spells. *Id.* She said that she had an anxiety attack once in a while and, when it happened, she would experience heart palpitations, feelings of not being able to breathe, and the sense that she was going to die. Tr. at 498-99. Brank has trouble with concentration and memory. Tr. at 499. She stated that she takes several medications for depression and other physical problems but they do not help. Tr. at 500-01. Side effects of the medications include frequent urination, daytime tiredness with an overwhelming need for sleep, lack of coordination getting up, and difficulty sleeping. Tr. at 502. She gets two to three migraines each week. Tr. at 503.

As for activities of daily living, Brank gets her children up for school, drives her daughter to work, runs errands, and attends medical appointments. Tr. at 504. She takes care of her personal needs. Tr. at 504-05. She performs household chores including laundry and preparing meals as long as her back allows her. Tr. at 505. She also takes care of her grandchildren. Tr. at 507.

### b.    Ted Grunza's Testimony

Grunza testified that he has been Brank's friend for more than seven  years. Tr. at 512. Brank was outgoing, independent, and self-sufficient when Grunza first met her. Tr. at 513. She used to go to barbecues, comedy clubs, and dinners out. *Id.* About four years ago, Grunza noticed that Brank was beginning to have trouble coping with family-related stress. Tr. at 514. She stopped participating in social engagements she had previously enjoyed and repeatedly canceled plans at the last minute. Tr. at 516. Grunza testified that Brank is "a little unstable," yet had been "even-tempered" in the past. Tr. at 517. Grunza also testified that Brank used to be

11

"one of the most independent people [he's] ever known," but now she needs help with basic tasks such as making a phone call.  Tr. at 515-16.

### c.  The Vocational Expert's Testimony

Vocational expert Beth Kelly testified that if a person of Brank's age, education, and work experience were limited in the manner ultimately found by the ALJ, such a person would not be able to perform Brank's past relevant work.  Tr. at 523.  The expert believed, however, that such a person would be able to perform the requirements of light and sedentary occupations.  Tr. at 20, 522.  Representative jobs include an assembler (500 locally and 120,000 nationally at sedentary level and 2,000 locally and 200,000 nationally at light level), a hand packer (1,000 locally and 300,000 nationally), and a product inspector (120 locally and 30,000 nationally at sedentary and 1,000 locally and 150,000 nationally at light).  Tr. at 20.  On cross-examination by Brank's attorney, Kelly agreed that if Brank had additional limitations such as the need to sleep for three to four hours a day due to drowsiness, the presence of unpredictable numbness in the hand requiring her to cease activities for up to an hour, and the inability to leave the house at times due to depression, she would be precluded from competitive employment.  Tr. at 524.

### 3.  The ALJ's Findings

On September 9, 2006, the ALJ issued the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.  The claimant has not engaged in substantial gainful activity since September 15, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease and depression (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. She can stand and walk for four hours in an 8-hour workday and sit for four hours in an 8-hour workday but must be able to change body positions due to her impairments from an exertional standpoint. Nonexertionally, her pain and depression is not so significant as to preclude the performance of simple, routine, unskilled, and low stress tasks. Because of her mental impairment, she cannot tolerate more than minimal interaction with the public and supervisors. She must avoid working around heights and moving machinery.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on November 30, 1959 and was 43 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from September 15, 2003 through the date of this decision (20 CFR 404.1520(g)).

Tr. at 15-20.

13

## III. LEGAL STANDARDS

### A. Motion For Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil
Procedure 56(c). In determining the appropriateness of summary judgment, the Court must
"review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the
nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves
v. Sanderson Plumbing Prods., Inc.,* 530 U.S.133, 150 (2000) (internal citation quotation marks
omitted). If the Court is able to determine that "there is no genuine issue as to any material fact"
and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate.
*Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B. Review Of The ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by
"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383 (c)(3); *Monsour Med. Ctr. v. Heckler,* 860
F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the
evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart,* 399 F.3d 546,
552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does
not mean a large or significant amount of evidence, but rather such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487
U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the
Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh
the evidence of record. *See Monsour,* 806 F.2d at 1190. The Court's review is limited to the

14

evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "'Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence.'" *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (quoting *Pysher v. Apfel*, 2001 WL 793305 at *3 (E.D. Pa. Jul. 11, 2001)).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 239 F.3d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42. U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). In order to qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is

15

defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423 (d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at

16

428. When a claimant's impairment or its equivalent matches an impairment in the listing, the

claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment,

either singly or in combination, fails to meet or medically equal any listing, the analysis continues

to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the residual

functional capacity ("RFC") to perform her past relevant work. *See* 20 C.F.R. §

404.1520(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work);

*Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do

despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34,

40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her

past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the

Commissioner to determine whether the claimant's impairments preclude her from adjusting to

any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when

the claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is

on the Commissioner to show that the claimant is capable of performing other available work

before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the

Commissioner must prove that "there are other jobs existing in significant numbers in the national

economy which the claimant can perform, consistent with her medical impairments, age,

education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must

analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ

often seeks the assistance of a vocational expert. *See id.*

17

**B. Brank's Arguments On Appeal**

On appeal, Brank presents two main arguments: (1) the ALJ's findings are not supported
by substantial evidence because the ALJ ignored significant probative evidence when evaluating
Brank's RFC; and (2) Brank has submitted new and material evidence to the Appeals Council
which demonstrates that she meets Listing 12.04 and is, therefore, disabled within the meaning of
the Social Security Act during the relevant time period. To support her first argument, Brank
asserts that: (1) the ALJ failed to consider all of the evidence in the record regarding Brank's
anxiety and depression; (2) the ALJ ignored relevant and probative evidence of exertional
limitations when evaluating Brank's RFC; and (3) the ALJ ignored significant probative evidence
when finding that Brank's impairments have only a mild impact on her ability to perform other
work and on her activities of daily living. As explained below, the Court finds that substantial
evidence supports the ALJ's findings and the additional evidence Brank submitted to the Appeals
Council is not new and material.

**1. The ALJ Properly Considered All Of The
Relevant Record Evidence When Evaluating Brank's RFC**

Brank argues that the ALJ's RFC assessment was largely based on the conclusion that
Brank's "medically determinable impairments could reasonably be expected to produce the
alleged symptoms, but that the claimant's statements concerning the intensity, persistence and
effects of these symptoms are not entirely credible regarding her symptoms and limitations." Tr.
at 18. Brank further asserts that, in reaching this conclusion, the ALJ ignored probative evidence
and failed to explain his reasons for rejecting or disregarding certain evidence. The
Commissioner responds that the ALJ adequately considered all the evidence and notes the ALJ

18

does not have to cite or refer to every piece of evidence if he articulates his rationale in the analysis.

When determining a claimant's RFC, the ALJ must consider all relevant evidence. This includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41. The ALJ must provide some explanation when he has rejected relevant evidence or when there is conflicting probative evidence in the record. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981). The Court is "unable to conduct [its] substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." *Walton v. Halter*, 243 F.3d 703, 710 (3d Cir. 2001). However, a written evaluation of every piece of evidence is not required as long as the ALJ at least minimally articulated his analysis for that particular line of evidence. *Phillips v. Barnhart*, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004) (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). The ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it. *Id.* (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Moreover, it is not for the Court to reweigh the various medical opinions in the record. *See Monsour*, 860 F.2d at 1190. Instead, the Court's review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions. *Id.*

19

### a.    Anxiety and Depression

Brank argues that the ALJ failed to consider all the limiting effects of her nonexertional impairments of anxiety and depression. She presents three specific arguments: (1) the ALJ did not take into account the changes in Plaintiff's life and attributed her problems to past events; (2) the ALJ found Plaintiff's testimony not completely credible, but ignored the evidence supporting her testimony, specifically two letters from Christina Johnson; and (3) the ALJ heavily relied on the reports of Drs. Gill and Villafuerte while other evidence contradicted these reports. The Commissioner responds that Ms. Johnson's letters merely constitute unsupported opinions. The Commissioner further suggests that, according to her treating physician's opinion, Brank's symptoms improved and were under control after treatment, allowing her to function effectively. The Commissioner concludes that an impairment cannot serve as the basis for a finding of disability if it can be reasonably controlled by treatment or medication. *See* D.I. 17 at 116 (citing *Dearth v. Barnhart*, 34 Fed. Appx. 874 (3d Cir. 2002)).

The Court finds that the ALJ considered all of the relevant and probative evidence concerning Brank's depression and anxiety. The ALJ referred extensively to the medical record of Brank's long-term treating physicians, Drs. Gill and Villafuerte. Based largely on these physicians' reports, the ALJ found that Brank's depression was severe. He further found that Brank's depression was largely due to family stressors, that medication helped to improve her symptoms, that she can function well despite all the stressors, and that she continued to act as the head of the family. This is substantial evidence that Brank was not disabled.

The record refutes Brank's argument that the ALJ did not consider the changes in her life. The ALJ found that Brank's symptoms "waxed and waned due to stressors at home including

20

some environmental issues related to her home." Tr. at 16. In reaching this conclusion, the ALJ made reference to Brank's medical records from September 2003 through March 2006. The ALJ discussed Dr. Villafuerte's notes dated August 2005 through March 2006 and found, based on those notes, Brank functioned effectively. *Id.*

Brank maintains that the ALJ erred as a matter of law by failing to consider Ms. Johnson's two letters. To support her position, Brank cites Third Circuit cases to demonstrate that the ALJ must "consider all evidence in the case record and provide a clear and satisfactory reason for disregarding specific pieces of evidence." (D.I. 19 at 3-4) However, the Third Circuit has consistently held only that the ALJ must give a clear reason if he or she disregards or rejects "competent" or "probative" evidence. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433, 435 (3d Cir. 1999); *see also Fargnoli*, 247 F.3d at 42. The ALJ's failure to cite the evidence does not necessarily mean that he failed to consider it. *See Phillips*, 91 Fed. Appx. at 780 n.7. In this case, Ms. Johnson's letters merely provided her opinions, without any medical support. Hence, these letters were not "competent" or "probative" evidence.

Brank complains that the ALJ heavily relied on Drs. Gill and Villafuerte's reports and ignored contradictory evidence, namely Dr. Desai's notes. It is appropriate for the ALJ to give significant weight to the reports of Drs. Gill and Villafuerte because they were Brank's long-term treating physicians and other evidence did not contradict their reports. Under the "treating physician doctrine," "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). A treating physician's opinion is therefore accorded "controlling weight" if it is "well-supported by

21

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli*, 247 F.3d at 42. Where there is contradictory medical evidence, regulations specify the factors an ALJ must consider in deciding how much weight to accord a treating physician's opinion, including: treatment relationship, length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion afforded by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927; *see also Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 660 (D. Del. 2008).

Here, Dr. Desai's notes do not contradict the reports of Drs. Gill and Villafuerte. Dr. Desai noted that Brank's symptoms were tightly associated with her family stressors. For instance, Dr. Desai reported that Brank complained of "more" depression because of problems with children. Tr. at 384. Dr. Desai also continued to observe the symptoms of episodes of depression and crying spells. During her treatment of Brank, Dr. Desai changed Brank's prescription a few times. Similarly, Drs. Gill and Villafuerte consistently observed the fluctuation of Brank's mental status due to her family issues. They also prescribed different medications to achieve better results for Brank. *See, e.g.*, Tr. at 142. Dr. Desai's notes are consistent with the reports from Drs. Gill and Villafuerte.

Even assuming that Dr. Desai's notes did contradict Drs. Gill and Villafuerte, the ALJ's reliance upon the treating physicians' records would still be warranted. Dr. Gill was Brank's primary care physician from January 2003 to at least March 2006 and Dr. Villafuerte was her psychiatrist from May 2005 to March 2006. Dr. Gill's reports run to 121 pages; Dr. Villafuerte's

to 53 pages.  By contrast, Dr. Desai saw Brank for less than two months and her reports consist of three pages, without any lab studies or test results.

### b.    Exertional Limitations

Brank contends that the ALJ ignored probative medical evidence that corroborated her testimony at the hearing.  Specifically, Brank argues that the ALJ disregarded the pain questionnaires she completed between January and April of 2006 while being treated at Mid-Atlantic Spine.

The Court disagrees.  In his decision, the ALJ extensively referred to the medical records presented to him, including treating physicians' notes, medical examinations, and the state agency's disability assessments.  Tr. at 15-16.  The ALJ recognized that Brank's degenerative disc disease was severe, but the condition was not disabling, and did not meet or equal the requirements of Listing 12.04.  Although he did not discuss the pain questionnaires in detail, the ALJ did refer to Brank's records at Mid-Atlantic Spine, of which the questionnaires are a part.  Tr. at 16.

Brank further argues that the ALJ inaccurately concluded that Brank's back impairment improved in response to treatment.  The ALJ wrote: "Treatment for her back pain has consisted of medication, exercise, and injections with improvement."  Tr. at 16 (internal citation omitted).  The Mid-Atlantic Spine records provide substantial evidence for the ALJ's conclusion.  For example, on her February 22, 2006 visit – two days after receiving an epidural injection for her pain – Brank reported that immediately after the recent injection her pain level was at its lowest level,

that is level 1 on a scale of 1 to 10.[9]  Tr. at 407, 411.  Also, on multiple occasions, Brank reported

that medication made her pain better (not eliminated, but improved).  *See* Tr. at 414 (February 9,

2006 Brank reporting that "using Naproxen" made her pain better); Tr. at 416 (January 25, 2006

report in which Brank answered "What makes your pain better?" with "changing position or

activity, taking meds[,] using patch – all of these only dull pain but doesn't stop it"); Tr. at 425

(answering same question on December 28, 2005 by stating "currently use presc. naproxen").

Brank further complains that the ALJ did not fully recognize the impact of numbness on

her ability to function.  But it was Dr. Schrandt who treated Brank for numbness and the ALJ

expressly discussed Dr. Schrandt's reports that Brank's normal neurological exam, brain MRI,

and lab results confirmed that her numbness was caused by stress, not any neurological disorder.

Tr. 16, 348-49, 376, 382.  The ALJ's finding is supported by substantial evidence.

### c.  The Impact Of Brank's Impairments

Brank argues that the ALJ erred in concluding that her impairments have only a mild

impact on her ability to perform work and activities of daily living.  She complains that the ALJ

wrongly found her statements concerning the intensity, persistence, and limiting effects of her

symptoms not to be entirely credible.

In determining a claimant's RFC, the ALJ is empowered to evaluate the credibility of

witnesses regarding the claimant's subjective complaints.  *See* 20 C.F.R.§ 404.1529(d)(4); *see*

*also Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).  An ALJ's credibility

---

[9]Mid-Atlantic Spine's pain scale is as follows: "0 (no pain); 1-2 (tolerate without
medications); 3-4 (tell someone about my pain, take aspirin or Motrin); 5-6 (mild narcotic, ex.
Tylenol #3); 7-8 (go to the ER, take strong narcotics); 9-10 (admission to hospital for pain
control)." Tr. at 395.

determination is entitled to deference and should not be discarded lightly, particularly given the ALJ's opportunity to observe an individual's demeanor. *See Reefer*, 326 F.36 at 380.

Brank's assertion that the ALJ's credibility conclusion relied on an outdated function report from April 2005 is without merit. The report was merely one piece of evidence the ALJ referred to in assessing credibility. The ALJ also considered Brank's own testimony during the hearing, her psychiatrist's mental health notes, and the state agency physician's assessments. Tr. at 19.

Brank faults the ALJ for making only a cursory reference to Ted Grunza's testimony. An ALJ must consider and weigh all medical and non-medical evidence, including the testimony of witnesses at the administrative hearing. *See Burnett v. Comm'r of Soc. Sec.*, 200 F.3d 112, 122 (3d Cir. 2000). Here, the ALJ did so, as is evident from the ALJ's detailed discussion of Brank's testimony and statement that Mr. Grunza's testimony concurred with hers. Tr. at 18. Just because the ALJ's summary is concise does not mean that he failed to give the testimony deserved consideration. "[T]he ALJ is not required to supply a comprehensive explanation for the [treatment] of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.

Finally, the ALJ properly considered Brank's daily activities as a basis for finding her able to engage in substantial gainful activity. It is well-established that an ALJ may consider a claimant's ability to clean, shop, cook, and maintain a residence in determining her ability to work. *See* 20 C.F.R. Pt. 404, Subpt. P. 12.00(C), App.1 (2005). During the administrative hearing, Brank described her "typical day" as including driving her daughter to school, running errands, and performing household chores including dish washing, vacuuming, and laundry. Tr. at

25

504. She was the primary or sole caregiver for her father and three teenage children, while also taking care of three grandchildren under the age of three. Tr. at 100, 286, 507. Brank's daily activities are routine and not merely "transitory or sporadic." *See Fargnoli*, 247 F.3d at 40 n.5. Furthermore, Brank's daily activities were not the only factor the ALJ considered in concluding that she was able to engage in substantial gainful activity; the ALJ took into account a number of factors, including Brank's daily activities, medical records, and her own testimony. In sum, there was substantial evidence to support the ALJ's credibility determination.

## 2.     The Evidence Submitted To The
## Appeals Council Does Not Warrant A Remand

Brank asks this Court to vacate and remand the ALJ's decision based on what she characterizes as new and material evidence she submitted to the Appeals Council. The Commissioner contends that the additional evidence was neither new nor material within the meaning of 42 U.S.C. §405(g).

In order for evidence that was not submitted to the ALJ to be considered by a District Court as a basis for remand, the evidence "must not only be new and material but also be supported by a demonstration by claimant of good cause for not having incorporated the new evidence into the administrative record." *Matthews*, 239 F.3d at 592 (internal citation omitted). New evidence must actually be "new" and "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). In order for evidence to be deemed "material," "it must be relevant and probative" and present a reasonable possibility that it would have altered the outcome of the Commissioner's determination. *Id.* If the new evidence is merely repetitive of the evidence in the records, it is not

26

sufficient to support a remand even if it tends to confirm the claimant's subjective complaint. *See Raglin v. Massanari*, 39 Fed. Appx. 777, 781 (3d. Cir. 2002). The good cause element requires the claimant to articulate a good reason for having failed to present the evidence to the ALJ. *Matthews*, 239 F.3d at 592.

Here, the evidence Brank points to as new and material – the records of social worker Ms. Devany and psychiatrist Dr. Desai – is merely cumulative of the evidence presented to the ALJ during the hearing. These records demonstrate that Brank continued to complain of depressive symptoms and family stressors, yet still served as the primary caregiver for her extended family. While the records show that Brank participated in an in-patient stay at the Rockford Center in September 2006, they also show that she was quickly discharged to an out-patient program and was found to be "slightly improved." Tr. at 471, 477. Thus, the "new" records do not suggest any significant change in Brank's daily activities, symptoms, or diagnosis.

Nor is Brank's evidence "material." Although it corroborates that Brank has suffered from recurrent depression, the ALJ did not deny the existence of this condition. He simply concluded that it not prevent Brank from obtaining substantial gainful employment. There is no reasonable possibility that the ALJ would have changed his decision had he considered Brank's additional records. In arguing that the new evidence would likely have changed the outcome of the ALJ's decision, Brank relies heavily on the interrogatories Ms. Devany completed on October 30, 2006, in which she checked boxes to the pre-drafted answers corresponding to the B and C criteria of Listing 12.04. However, Ms. Devany failed to provide any evidence, such as medical records, laboratory studies, or test results, to support her opinion.

## V. CONCLUSION

Accordingly, for the reasons set forth in this Memorandum Opinion, Brank's motion for summary judgment will be DENIED and the Commissioner's motion for summary judgment will be GRANTED.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

DOROTHY A. BRANK,                          :
                                           :
                Plaintiff,                 :
                                           :
        v.                                 :     Civ. No. 07-185-LPS
                                           :
MICHAEL J. ASTRUE,                         :
Commissioner of Social Security,           :
                                           :
                Defendant.                 :

---

# ORDER

At Wilmington this 22nd day of July, 2009, consistent with the Memorandum Opinion issued this same date, IT IS HEREBY ORDERED that:

1.      Defendant's cross-motion for summary judgment (D.I. 16) is GRANTED.

2.      Plaintiff's motion for summary judgment (D.I. 13) is DENIED.

3.      The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.


Leonard P. Stark
United States Magistrate Judge